552 A.2d 553

**STATE of Maryland**

v.

**Robert Thomas SAYRE, Jr.**

**No. 21, Sept. Term, 1988.**

Court of Appeals of Maryland.

Jan. 23, 1989.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for petitioner.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

Under Maryland Rule 4–345(b), a "court may modify or reduce or strike, *but may not increase the length of, a sentence*" once sentence has been imposed. [Emphasis supplied.] The question before us is: when is a sentence deemed to be imposed for purposes of the rule's prohibition against increase? Under the circumstances of this case, we shall hold that an increase in the length of sentence was impermissible.

Robert Thomas Sayre, Jr. (Sayre), an inmate at the Roxbury Correctional Institution in Hagerstown, violated institutional rules when he used a homemade "fishing line" to transport items from cell to cell. Correctional Officer Armstrong entered Sayre's cell to conduct a search and to recover the "fishing line." Armstrong ordered Sayre to sit on his bunk. Sayre refused, cursed at the officer, spat at him, and struck him in the face with his fist.

A jury in the Circuit Court for Washington County (Corderman, J., presiding) found Sayre guilty of battery. Following the return of the guilty verdict, Judge Corderman sentenced Sayre:

It will be the sentence of this Court that you be committed to the care and custody of the Commissioner of Correction for a period of five (5) years, to be served *concurrently* with any sentence that you are currently obligated to serve. He is to be remanded to custody. Come, get him.

Alright, Mr. [State's Attorney], the ...

[STATE'S ATTORNEY]: Your Honor, I take it you meant to say *concurrently?*

THE COURT: I said *consecutively.*

[STATE'S ATTORNEY]: No, your Honor, I believe you said *concurrently.*

THE COURT: Did I? I meant to say *consecutively.* Excuse me. Bring the Defendant back.

(Whereupon, defendant and counsel are returned to the courtroom and present at trial table.)

THE COURT: Mr. Sayre, did I say concurrently or consecutively?

DEFENDANT: Concurrently.

THE COURT: Well, I meant to say consecutively. Five (5) years consecutive to. That means you do the eight years then you do the five years.

DEFENDANT: Yes sir.

THE COURT: Alright. [Emphasis supplied.]

In an unreported decision, the Court of Special Appeals reversed the sentence. That court, relying on *Smith v. State,* 31 Md.App. 310, 356 A.2d 320, *cert. denied,* 278 Md. 735, (1976), held that a sentencing judge may not increase a sentence to accomplish his original objective. Thus, the consecutive sentence imposed by Judge Corderman was vacated and the original, concurrent sentence, was reimposed. *Sayre v. State,* No. 671, Sept. Term, 1987 (Md.App. filed 13 Jan. 1988) (per curiam). We granted certiorari to determine the important issue involved.[1]

---

**1.** Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 11E calls for a consecutive sentence upon an inmate's conviction for assault on a correctional officer. Citing this provision, Part II of the dissent argues that this case should turn on Md. Rule 4–345(a)'s grant of authority to correct an illegal sentence. The dissent further contends that this issue is within the question framed by the State in its petition for certiorari, and that even if this were not so, we should take the extraordinary step of addressing the illegal sentence issue. We disagree. The question framed by the State clearly concerns correction of an allegedly inadvertent misstatement at sentencing, not correction

When a sentence is changed from concurrent to consecutive, it is increased in length. *See, e.g., Collins v. State,* 69 Md.App. 173, 198, 516 A.2d 1015, 1028 (1986), *cert. denied,* 308 Md. 572, 520 A.2d 1328 (1987). The State does not question this proposition. Instead, it cites cases such as *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (per curiam), and *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), to the effect that the federal constitutional prohibition against double jeopardy does not bar a sentence increase under the circumstances of this case. The State also argues that under Maryland law the increase here would not be prohibited because under Maryland double jeopardy principles, an increase in sentence is prohibited only "[i]f a defendant has begun serving his sentence in a penal institution and is no longer in the custody of an officer of the court...." *Brown v. State,* 237 Md. 492, 503, 207 A.2d 103, 110 (1965). Finally, the State insists that a judge may correct a mere slip of the tongue so that the sentence will reflect his true intention.

As to the double jeopardy contentions, we need not consider them. The case before us is governed by Rule 4–345(b) and our task is to construe it. We will not reach out to consider constitutional questions not necessary to our decision. *E.g., Allgood v. State,* 309 Md. 58, 82–83, 522 A.2d 917, 929 (1987); *Rutherford v. Rutherford,* 296 Md. 347, 363–364 n. 6, 464 A.2d 228, 237 n. 6 (1983). As to the "slip-of-the-tongue" argument, we shall consider it as we examine the rule for it is in the context of the rule and its

of an illegal sentence. This is not the kind of case in which we have taken the unusual step of disregarding the ordinary limitations on scope of review imposed by Rule 8–131(b)(1); *see, e.g., Yarema v. Exxon Corp.,* 305 Md. 219, 231 n. 9, 503 A.2d 239, 245 n. 9 (1986) (jurisdictional issues are exceptions to what is now Rule 8–131(b)(1)). Moreover, in the case before us, not only did the State not raise the illegal sentence issue in its certiorari petition, it never argued it in its brief or orally. *Compare Yarema,* in which the jurisdictional issue was argued by both sides. Under these circumstances, the "correction of an illegal sentence" issue is simply not before us.

purposes that we must examine the "slip-of-the-tongue" notion. We note at the outset, however, that Rule 4–345(b) restricts, to a greater extent than *Brown*, the authority of a court to increase a legally imposed sentence. Under a *Brown* analysis, this power ends when the defendant commences to serve his or her sentence. Under the rule, the power to increase terminates when sentence is imposed.

In *Pugh v. State*, 271 Md. 701, 319 A.2d 542 (1974), the trial judge found Pugh guilty of possession of cocaine under indictment number 2110, but not guilty of distribution under indictment number 2111. *Pugh*, 271 Md. at 704, 319 A.2d at 543. The assistant State's Attorney then argued contrary to the latter result. The judge, persuaded to see matters in a different light, found Pugh guilty under number 2111 as well. *Id.* at 704, 319 A.2d at 544. Judge Eldridge, writing for this Court, held that change of mind was impermissible. "It is therefore settled that once the trier of fact in a criminal case, whether it be the jury or the judge, *intentionally* renders a verdict of 'not guilty,' the verdict is final and the defendant cannot later be retried on or found guilty of the same charge." *Id.* at 706, 319 A.2d at 545 [emphasis supplied]. *See also Brooks v. State*, 299 Md. 146, 472 A.2d 981 (1984).

But in *Pugh* Judge Eldridge went on to explain that "where a judge *'obviously inadvertently'* says one thing when he means something else, and immediately thereafter corrects himself, a 'verdict' would not be rendered for purposes of Rule 742 [present Rule 4–328] or the prohibition against double jeopardy." *Pugh*, 271 Md. at 707, 319 A.2d at 545 [emphasis supplied]. Grasping at that *dictum* the State avers that Judge Corderman's "concurrent" disposition in this case was inadvertent and corrected as soon as the prosecutor called the matter to the judge's attention.

That may be so. The problem is that while to permit correction of a slip of the tongue is not necessarily undesirable, to allow a judge who has intentionally made a sentencing decision to change his mind in a manner adverse to the defendant is. Double jeopardy considerations aside, the

latter situation carries with it too many possibilities of vindictiveness. Furthermore, it is not always easy to distinguish between an inadvertent slip of the tongue and a true change of mind. In *State v. Cousins*, 208 Neb. 245, 302 N.W.2d 731 (1981), for example, a judge imposed a concurrent sentence and six minutes later called the parties back to the courtroom and changed the sentence to consecutive. *Cousins*, 208 Neb. at 246, 302 N.W.2d at 732. The Supreme Court of Nebraska held that a sentence validly imposed takes effect from the time it is pronounced and cannot thereafter be increased. *Id.* at 247, 302 N.W.2d at 732. It declined to accept a "slip-of-the-tongue" argument because

to begin questioning whether a valid sentence has been pronounced inadvertently would involve this court in a morass. We would be called upon to read the mind of the sentencing judge in any circumstance in which a valid sentence had been pronounced and later amended due to the judge's proclaimed inadvertence.

*Id.* at 247, 302 N.W.2d at 733. *See also State v. Vernon*, 218 Neb. 539, 542, 356 N.W.2d 887, 890 (1984).

The same concern is expressed in *Scott v. State*, 64 Wis.2d 54, 59, 218 N.W.2d 350, 353 (1974) (quoting *Chandler v. United States*, 468 F.2d 834, 836 (5th Cir.1972)):

"... [T]he Government argues that an exception should be recognized in cases such as this where the alteration of the sentence was undertaken solely to conform to the original intention of the trial judge and the error in the original sentence was due solely to an inadvertent transposition of the numbers. Were we clairvoyant and able to say for certain in every case what the trial judge really 'intended,' this argument might be persuasive. Being mere mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry." [Brackets in original.]

*See also State v. Perry*, 136 Wis.2d 92, 111–115, 401 N.W.2d 748, 757–758 (1987). *Cf. Merry v. State*, 752 P.2d 472, 473–475 (Alaska Ct.App.1988) (sentencing judge said both concurrent and consecutive in handing down sentence;

proper for him to clarify the inconsistency ten minutes later and to impose consecutive sentence); *Commonwealth v. Fleming*, 332 Pa.Super. 118, 134–137, 480 A.2d 1214, 1223–1224 (1984) (increase of sentence permitted when sentencing judge corrects sentence, changing it from concurrent to consecutive "almost in the same breath").

▉ After careful weighing of the policy considerations implicated, we, too, are unwilling to allow a procedure that will permit an inquiry of the sentencing judge's subjective intent under circumstances like those here present. We hold that under Rule 4–345(b), once sentence has been imposed, there can be no inquiry into intention or inadvertence. The sentence, for Rule 4–345(b) purposes, stands as pronounced. Like any bright line rule, this holding may produce occasional hardship for the State, but it will avoid difficult questions of subjective intent and should encourage trial judges to use great care in pronouncing sentence—an obviously desirable practice. *See* Memorandum from Chief Judge Robert C. Murphy to All Maryland Trial Judges (13 Oct. 1988) (discussing clarity in sentencing proceedings).

▉ It remains only to determine when a sentence has been imposed for purposes of Rule 4–345(b). The rule is silent in this respect, and there seems to be no relevant "legislative" history. We do not believe, however, that the answer turns on questions of when the defendant begins serving his or her sentence or when he or she leaves the custody of a court officer and enters the custody of the executive branch.

Ordinarily, sentencing may be considered as the last phase of a criminal trial. When sentence is pronounced or imposed, there is a final judgment for purposes of appeal. *See, e.g., Jones v. State*, 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984). The sentencing phase, for purposes of Rule 4–345(b), is at least at an end when the court indicates that the particular case before it is terminated, as by calling, or directing the clerk to call, the next case. Here, Judge

Corderman, after imposing the concurrent sentence on Sayre, said

He is to be remanded to custody. Come, get him.

Obviously, Sayre's case was over. There was nothing more to be done. The court was ready to proceed to the next case.[2] We hold that under these circumstances sentence was imposed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE COUNTY COMMISSIONERS OF WASHINGTON COUNTY.

MURPHY, C.J., and RODOWSKY and McAULIFFE, JJ., dissent.

RODOWSKY, Judge, dissenting.

I respectfully dissent. In my view the majority has misapplied Md. Rule 4–345(b) with the result, in this case, of sustaining an illegal sentence.

I

The Court rests its affirmance of the Court of Special Appeals on Rule 4–345(b) and not on constitutional or common law prohibitions against double jeopardy. Nevertheless, cases which arise out of misstatements by a sentencing judge and in which the defendant claims that the sentence has been increased in violation of double jeopardy prohibitions are instructive on the construction of Rule 4–345(b). These cases demonstrate that neither constitutional law nor administrative policy require Rule 4–345(b) to be given the inflexible construction applied by the majority.

---

**2.** The briefs contain some debate about whether the transcript shows that Sayre had been removed from the courtroom before Judge Corderman attempted to change the sentence to consecutive. The record permits, although it does not compel, such a reading. But in our view, a factual determination of that question is not crucial. Removal of the defendant from the courtroom may or may not bear on when a sentencing proceeding has been concluded. Here, however, it is apparent that Sayre's case was over, whether he remained in the courtroom or not.

A power to increase sentences imposed by United States District Courts was conferred on United States Courts of Appeal, on an appeal by the Government, under certain provisions of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 1001(a), 84 Stat. 922, 948–51 (codified at 18 U.S.C. §§ 3575–76 (1982)). The provisions were held to be constitutional when challenged on double jeopardy grounds in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In reviewing the constitutional background of the issue, the Court said:

"Historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal. The common-law writs of *autre fois acquit* and *autre fois convict* were protections against retrial. ... Although the distinction was not of great importance early in the English common law because nearly all felonies, to which double jeopardy principles originally were limited, were punishable by the critical sentences of death or deportation ... it gained importance when sentences of imprisonment became common. The trial court's increase of a sentence, so long as it took place during the same term of court, was permitted. This practice was not thought to violate any double jeopardy principle. ... The common law is important in the present context, for our Double Jeopardy Clause was drafted with the common-law protections in mind. ... This accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence."
*Id.* at 133–34, 101 S.Ct. at 435–36 (citations omitted).

The trial judge increased the sentence in *Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947) where the defendant had been convicted of operating a distillery in violation of a revenue statute which mandated a minimum fine of $100 and imprisonment. At a morning session of court the trial judge pronounced a sentence of imprison-

ment only. About five hours later the court caused the defendant to be brought back into the courtroom from the local federal detention jail where the prisoner was awaiting transportation to the penitentiary where he was finally to be confined. The judge then added the mandatory fine which had been omitted that morning. The Court, speaking though Justice Black, upheld the "increase" of sentence and said that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Id.* at 166–67, 67 S.Ct. at 648–49.

Justice Rutledge, writing in *Rowley v. Welch,* 114 F.2d 499 (D.C.Cir.1940) when he was a member of the United States Court of Appeals for the District of Columbia Circuit, confronted the factual situation presented in the case *sub judice.* The sentencing judge had inadvertently pronounced sentence to run concurrently but, before the prisoner was removed from the courthouse, the prisoner was returned to the courtroom and the judge corrected the sentence to make it consecutive. In rejecting the claim of constitutional violation the court presented the following excellent analysis:

"The oral utterance is an act of judgment, but it is not an entirely unalterable one. Other events, as for example entry of the order of commitment, are required to give it absolute finality. Until they occur, the court retains jurisdiction and power, within recognized limits which need not be specified here, to make corrections, perhaps even other changes, which may be required by a right administration of justice. Entirely apart from specific constitutional limitations, therefore, there is nothing in the nature of mere oral pronouncement of sentence, judgmental in character though that act may be, which gives it absolutely unalterable quality.

"Nor do we think the Fifth Amendment gives it such consummate finality that the court is precluded from correcting an inadvertent pronouncement, even by increasing the penalty, provided the change is made as

promptly as was done in this case. Appellant's view, carried to its logical extreme, would prevent a correction of mere inadvertence at any time after it occurs, even in the next breath. So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable. ... It was not the purpose of the Amendment to compel courts to give effect to their inattentive and nondeliberative acts, so long at least as their actual execution has not been initiated and the prisoner has not been harmed by them other than in hearing the pronouncement made and promptly corrected."

*Id.* at 503.

Other cases holding that a sentencing judge did not err when, after announcing a sentence to be concurrent, the judge corrected the sentence to one running consecutively are: *Kroll v. United States,* 433 F.2d 1282, 1292 (5th Cir.1970) (correction made "moments later"), *cert. denied,* 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112 (1971); *Williams v. United States,* 422 F.2d 1318 (5th Cir.1970) (per curiam) (correction made same day); and *Thomas v. United States,* 388 A.2d 1231 (D.C.1978) (correction made approximately seven hours later on same day).

Nor does the history of Rule 4–345(b) justify the extreme construction which the majority has placed upon it. That section in full reads:

"(b) **Modification or Reduction—Time for.**—The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has

been filed. The court may modify or reduce or strike, but may not increase the length of, a sentence. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule."

The provision was initially Rule 10(c) of the General Rules of Practice and Procedure, Part Four, I, Criminal Rules of Practice and Procedure which, in the rules revision effective January 1, 1957, became Rule 744.c. The provision at that time only dealt with when "the court may reduce a sentence...." Former Chapter 700 (Criminal Causes) was further revised effective January 1, 1962, at which time then new Rule 764(b) read:

"For a period of ninety (90) days after the imposition of a sentence, or within ninety (90) days after receipt by the court of a mandate issued by the Court of Appeals upon affirmance of the judgment or dismissal of appeal, or thereafter, pursuant to motion filed within such period, the court shall have revisory power and control over the judgment or other judicial act forming a part of the proceedings. The court may, pursuant to this section, modify or reduce, but shall not increase the length of a sentence. After the expiration of such period, the court shall have such revisory power and control only in case of fraud, mistake or irregularity."

Thus, when the sentencing court's power was enlarged to include the power to "modify," the proviso was also added that the court "shall not increase the length of a sentence." In view of the constitutional flexibility, an unlimited power to "modify" for ninety days after imposition of a sentence could well be read to include the power to increase after the lapse of some appreciable period of time from imposition of the sentence. When the proviso is read in the context of a power to modify at any time within a span of ninety days, the proviso makes sense. I cannot accept, however, that this Court or the Rules Committee intended the proviso to embrace a matter of minutes elapsing between a sentencing

judge's slip of the tongue and the correction of the misstatement.

Rule 1–201(a) tells us that "[t]hese rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay." The interpretation placed on Rule 4–345(b) by the majority is the antithesis of a modern system of procedure. Indeed, one must go back to Anglo–Saxon law to find the kind of formalism equal to that embraced by the majority. In that era the law required that the accusation of wrongdoing and the defendant's formal denial thereof "be delivered in set form with verbal accuracy and without correction or stammering. He who failed in a syllable failed in everything, said a legal proverb." M. Knappen, *Constitutional and Legal History of England* 59 (1942).[1]

The majority does not question that the sentence first pronounced by the trial judge in this case clearly resulted from misspeaking. The majority says, however, that "it is not always easy to distinguish between an inadvertent slip of the tongue and a true change of mind." Thus, in order to simplify the decision in some future case the majority holds that this undeniably inadvertent statement became the final judgment. I, on the other hand, would hold that where, as here, the record clearly shows that the sentencing judge misspoke in relation to his true intent, the misstatement may be corrected promptly, as it was here. It may well be that Rule 4–345(b) would apply in some other case under other facts where the record is doubtful as to a misstatement in relation to intent. But this Court is not compelled to use this case as the vehicle for drawing the line for all future cases.

---

**1.** To circumvent this formalism, the professional pleader was introduced, "not as one who [would] represent a litigant, but as one who would stand by the litigant's side and speak in his favor, subject however to correction, for his words [would] not bind [the] client until that client [had] expressly or tacitly adopted them." I F. Pollack & F. Maitland, *The History of English Law* 212 (2d ed. 1968).

## II

A further reason for reversal in this case is that the Court of Special Appeals has mandated an illegal sentence. In this case a prisoner assaulted a guard. So strong is the public policy against allowing assaults by prison inmates to go unpunished that the General Assembly has forbidden concurrent or suspended sentences for such assaults. Md. Code (1957, 1987 Repl.Vol.), Art. 27, § 11E provides:

"(a) *Assault on inmate or employee.*—Every inmate convicted of assault on another inmate or on an employee of the Division of Correction, the Patuxent Institution, the Baltimore City Jail, or any county jail or detention center, regardless of employment capacity, shall be sentenced for the crime of assault under this section.

(b) *Consecutive sentences.*—A sentence imposed under this section shall run consecutively to any sentence that was being served at the time of the assault, or that had been imposed but was not yet being served at the time of sentencing.

(c) *Suspension of sentence.*—A sentence imposed under this section may not be suspended."

The consecutive sentence imposed by the circuit court was statutorily required. It was the Court of Special Appeals, by mandating "CONSECUTIVE SENTENCE VACATED AND CONCURRENT SENTENCE REINSTATED," which changed that lawful sentence into an unlawful one.

The illegality of the mandate is open to review and correction because that issue is embraced within the question framed by the State in its petition for certiorari. We undertook to review "[w]hether the Court of Special Appeals erred in determining that the trial judge could not correct his misstatement at sentencing by changing the term of incarceration from 'concurrent' to 'consecutive'[.]" One reason why the trial judge could correct his misstatement and why the Court of Special Appeals erred by not permitting him to do so is that the misstated sentence in this case was an illegal one. Although the State's petition for certiorari does not advance the violation of Art. 27,

§ 11E as a reason for reversing the Court of Special Appeals, that reason is simply an additional reason for deciding the issue presented on certiorari in favor of the State's position.

Even if the illegality of the sentence mandated by the Court of Special Appeals is considered as a separate issue from that raised in the petition for certiorari, this Court should nevertheless address the issue. Rule 8–131(b)(1) in part states that "[u]nless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals ... the Court of Appeals *ordinarily* will consider only an issue that has been raised in the petition for certiorari ... and that has been preserved for review by the Court of Appeals." (Emphasis added). By its terms the rule permits exceptions in cases which are not ordinary. Here, the illegality of the mandate by the Court of Special Appeals is beyond dispute. By resting on a narrow reading of the certiorari petition while at the same time refusing to invoke the exception in Rule 8–131(b)(1), thereby permitting Sayre's assault effectively to go unpunished, the majority scorns the purpose of § 11E and ill-serves the prison guards whom that statute was intended to protect.

Further, the "bright line" purpose of the formalism imposed by the majority is not served when the sentence inadvertently pronounced is less than that mandated by law. Let us assume that the rule adopted by the majority was in effect at the time of sentencing in this case so that the trial judge was helpless to correct the announced sentence when he became convinced that he had not actually said what he had intended to say. Md. Code (1974, 1984 Repl.Vol.), § 12–302(c)(2) of the Courts and Judicial Proceedings Article gives the State a right to appeal where "the trial judge failed to impose the sentence specifically mandated by the Code." *See State v. Hannah*, 307 Md. 390, 514 A.2d 16 (1986). On our assumed facts, the State could appeal. The

sentence mistakenly imposed would be reversed and the circuit court would be directed to impose the sentence mandated by statute. Consequently, where the sentence mistakenly imposed is illegal, refusing to recognize the trial court's prompt correction requires an appeal to be taken where none should be necessary.

But the trial judge, in my view, is not helpless under these circumstances. Md. Rule 4–345(a) gives the court power to "correct an illegal sentence at any time." Literally the rule permits an illegal sentence to be corrected by increasing it, as well as by decreasing it. I believe that Rule 4–345(a) should be interpreted to permit an illegal sentence to be corrected by increasing it, so long as that increase is effected during the period when the State could achieve the same sentence by appeal when the sentencing judge "fail[s] to impose the sentence specifically mandated by the Code." It follows that the circuit court could not have erred in this case because the effect of correcting the misstatement was to make the illegal sentence a legal one. Under this analysis of Rule 4–345(a) it is immaterial whether the trial judge, in correcting the misstatement, consciously intended to conform the sentence to Art. 27, § 11E, because the trial judge had the duty to do so and had the power to achieve that result under Rule 4–345(a).[2]

The mandate of the Court of Special Appeals should be reversed.

Chief Judge Murphy and Judge McAuliffe authorize me to state that they join in the views expressed in this dissenting opinion.

---

**2.** Although the record is silent on whether the trial judge had § 11E in mind, the great probability is that he did. Article 27, § 11E was first enacted by Ch. 277 of the Acts of 1975. That enactment was introduced as Senate Bill No. 113 by then Senator Corderman, who was the sentencing judge in the Circuit Court for Washington County in this case. S. 113, 1975 Reg.Sess., Md. S.J. 122–23. This coincidence is not essential to the holding which I believe this Court should have made.