24

573 A.2d 403

**Derrick Oden BROWN**

v.

**STATE of Maryland.**

**No. 1342, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 10, 1990.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before GILBERT, C.J., and ROBERT M. BELL and WENNER, JJ.

ROBERT M. BELL, Judge.

Derrick Oden Brown, appellant, confessed to and was subsequently convicted by a jury in the Circuit Court for Prince George's County of the March 26, 1988 murder of Renee Thomas. The jury's verdict was for second degree murder. Appellant was sentenced to a term of 30 years imprisonment, with all but 20 years suspended, in favor of 5 years probation upon his release. On appeal, he presents the following issues for our consideration:

1. Did the trial court improperly curtail defense counsel's argument respecting suppression of Appellant's statement?

2. Did the trial court err in admitting hearsay evidence?

3. Must Appellant's sentence be limited to a term of 20 years?

The first issue has merit; we answer it in the affirmative. Consequently, we will reverse the conviction and remand the case to the circuit court for a new trial. We address the third issue for the guidance of the court on remand. *See* Maryland Rule 8–604(d).

## SUPPRESSION HEARING

The victim, Renee Thomas, was found dead on March 26, 1988, in a wooded area to the rear of the John Eager Howard Elementary School, Capitol Heights, Maryland. She had been severely beaten about the face and head. The cause of death was determined to be homicide.

On August 2, 1988, appellant telephoned the Prince George's County Police Department, homicide section, and confessed to the murder. Indicating a desire to turn himself in, he directed Detective Veeder, to whom he confessed, to meet him at a Homoco gas station. Officers Shimp and Johnson went to the Homoco station, picked appellant up, and brought him back to the police station.

At the police station, appellant was interrogated. As a result, he confessed, initially in a writing and subsequently by responding to questions the officers asked him. He wrote:

I, Mr. Derrick, did have a problem with Renee Thomas, and I got her on the corner, and took here [sic] in the woods, and took her off the map.

Responding to the officers's questions, he said that Thomas was a friend; that he picked her up on Nova Avenue, and they had sex in the rear of his car; that he then took Thomas to the John Eager Howard School, where they again engaged in sex, this time on the school grounds; and that, as they were having sex, he grabbed several tree limbs with which he beat Thomas about the head. The only reason appellant gave for killing Thomas was that she had stolen twenty dollars from him.

■ Appellant moved to suppress his confession, contending that it was neither voluntarily nor knowingly made. *See Hillard v. State*, 286 Md. 145, 150–54, 406 A.2d 415 (1979). Specifically, he cited, in support of the motion, his intoxication and alleged suggestive comments by the police, both contested issues. Following an evidentiary hearing, defense counsel, by proceeding to present argument on the motion, prompted the following exchange:

MR. NILAND: Your Honor, the law in this area I think is, so far as I know, is fairly set out in several cases, ... with respect to the consideration of intoxication and/or the effect of intoxication upon a person in having given a statement and whether the statement's knowing and voluntary. I concede the law in those areas is not very definitive or clear cut in telling us what kind of cases intoxication has reached a level where a statement would not be knowing or voluntary and, in fact, cases indicate the simple fact that a person is intoxicated or under the influence of drugs does not per se make a statement involuntary or unknowingly given and, therefore, does not per se exclude a statement.

Now, however, I think that in this case you have several factual considerations.

THE COURT: *Let me stop you right here.* I am aware of everything that you've just told me and so forth and I really would give a lot more consideration to what you're saying except for one factor in this case, and *I'm going to cut you short because I have to be someplace else.* But the problem I have in this case in regards to anything you're going to tell me about intoxication, drugs, whether it's free or voluntary, this is not the usual case that I see where there is an arrest made by the police or—your client initiated this whole procedure. It wasn't as a result of anything that the police did in this case that he was in Forestville.

MR. NILAND: I agree with that.

THE COURT: It was as a result of what he did and his actions in getting to Forestville were free and voluntary on his part. The police had nothing to do with getting him there. It was his idea. It was at his insistence. It was at his phone calls that he was in Forestville being questioned by the police.

MR. NILAND: I don't disagree that he initiated the contact.

THE COURT: That's what takes this case out of the ordinary—

MR. NILAND: To an extent it does, but it also reflects upon his lack of judgment as a result of having been engaged in the use, heavy use of alcohol and drugs before he contacted the police. Most sensible people, I would think most sensible people wouldn't call the police and say come and get me and talk about homicide.

THE COURT: *I'm going to cut this real short.* That's a problem for the jury, as far as I'm concerned. At this time I'm convinced by a preponderance of the evidence that what he—whatever statements he made orally or written were freely and voluntarily given and as a consequence your motion to suppress any and all statements in this case are denied. Always a pleasure to see you gentlemen. (Emphasis supplied)

Analogizing argument on a motion to suppress to closing argument in a criminal case, appellant asserts that the trial court erred in cutting off argument, and without allowing the completion of argument, rendering a decision on the motion. He argues that he was entitled to a full and fair opportunity to present argument prior to the court's announcement of a decision. He relies on *Spence v. State*, 296 Md. 416, 419–420, 463 A.2d 808 (1983) and *Martinez v. State*, 309 Md. 124, 522 A.2d 950 (1987).

*Spence* makes clear "that the opportunity for summation by defense counsel prior to a verdict in a non-jury trial as well as in a jury trial is a basic constitutional right guaranteed by Article 21 of the Maryland Declaration of Rights and the Sixth Amendment to the United States Constitution as applied to the States by the Fourteenth Amendment." *Id.*, 296 Md. at 419, 463 A.2d 808. *See also Cherry v. State*, 305 Md. 631, 635, 506 A.2d 228 (1986), where the Court said:

The constitutional right of a defendant to be heard through counsel necessarily includes his right to have counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the

argument is not within the issues in the case, and the trial court has no discretion to deny accused such right.

Neither the Court of Appeals nor this Court has rendered a similar holding as to the right of a defendant, through counsel, to argue a suppression motion. The issue was before the court in *Martinez, supra;* it was one of the issues as to which the Court of Appeals granted certiorari. The case was decided on other grounds, however, and that issue was not reached. *See* 309 Md. at 130, 522 A.2d 950. Nevertheless, the court's comments on the nature and importance of a suppression hearing are instructive. Addressing the question whether an accused's right to force disclosure of grand jury testimony for purposes of cross-examining a State's witness who has testified on direct examination, the Court said:

A suppression hearing is a critical part of the criminal adjudicatory process. The Supreme Court has noted, with good reason, that "suppression hearings often are as important as the trial itself." *Waller v. Georgia,* 467 U.S. 39, 46–7, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (citations omitted). For example, the State's case may turn upon the defendant's confession or other evidence he seeks to suppress, and the trial court's ruling on such matters may be dispositive of the outcome of the case. Thus, if the defendant prevails at the hearing, the State's case could be seriously crippled, possibly prompting a dismissal of charges or some other disposition favorable to the defendant. On the other hand, if the State is successful, the suppression hearing may be the *only* proceeding, because the defendant thereafter pleads guilty pursuant to a plea bargain. *See id.* at 47, 104 S.Ct. at 2215.

Moreover, a suppression hearing resembles a full trial in many respects. Witnesses are sworn and provide testimony, and opposing counsel present arguments. Significantly, the outcome of the hearing will frequently turn on the trier of fact's evaluation of the evidence and the credibility of the witnesses. *See id.* (citation omitted)

("The outcome frequently depends on a resolution of factual matters."). As such, access to grand jury testimony for use during cross-examination to impeach a witness, to refresh his memory, or to test his credibility, will significantly aid the defense at a crucial stage in the case. Beyond the benefit to the defendant, the availability of such testimony will enhance the accuracy of the factual determinations made at the suppression hearing.... (Emphasis in original, citations omitted).
309 Md. at 143–44, 522 A.2d 950.

These comments are particularly apposite to the case *sub judice*. Without appellant's confession, the State's case would have been crippled and, more likely, irretrievably lost. Thus, we hold that, in this case, it was crucial that appellant be afforded a full and fair opportunity to present closing argument.

The State suggests, as it did in *Martinez*, that the importance of the suppression hearing is undermined by virtue of the fact that the issue raised by the motion to suppress can be, and more likely than not will be, relitigated at trial. The Court in *Martinez* had little difficulty rejecting that argument:

We reject this contention. It is well settled that a defendant in a criminal case has a constitutional right to have a "fair hearing and a reliable determination" that his confession was given voluntarily, a determination uninfluenced by the truth or falsity of the confession.... This is essential because the defendant in a criminal case "is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession...." ... In this State, two steps are involved in the voluntariness determination. As we explained in *State v. Kidd*, 281 Md. 32, 37, 375 A.2d 1105, 1109, *cert. denied*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977) (citations omitted) "[t]he trier of fact passes on traditional voluntariness only after the judge, upon a hearing, out of the presence of the jury, has fully and independently

resolved the issues against the accused." The trial judge's initial determination, which is wholly separate from the ultimate presentation of the issue to the jury, addresses the confession's initial admissibility. If the trial judge determines that the confession is not voluntary, the confession is not admitted into evidence and the trier of fact never considers it.... However, if the trial judge concludes that the confession is voluntary, it is received in evidence and its admission becomes prima facie proof that the statement is freely and voluntarily given.... Thus, the defendant has a constitutionally protected interest in having a trial judge's admissibility determination done correctly in the first instance, and that interest is not protected by the possibility that the trier of fact at some later point may have an opportunity to determine the voluntariness of the confession. (Citations and footnotes omitted)

309 Md. at 144–45, 522 A.2d 950.

We now proceed to determine whether, under the circumstances here presented, the court committed reversible error by rendering a decision on the motion prior to appellant's completion of his argument. We think *Ivey v. State*, 80 Md.App. 435, 564 A.2d 105 (1989) is instructive. There, at the end of all the evidence, defense counsel began to make his closing argument. Before he had finished, however, the court interrupted and rendered its verdict on the merits. We reversed Ivey's conviction. 80 Md.App. at 442, 564 A.2d 105. We noted that the Court of Appeals in *Cherry* found "[o]f particular significance ... *Covington's* [1] teaching

that the failure to afford defense counsel the opportunity to argue the sufficiency of the evidence and the applicable law before the verdict is rendered

(1) is not reviewable on direct appeal in the absence of timely protest or objection when the record is not

---

1. *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978).

sufficient to show that the failure to protest or object was not knowing and purposeful; but

(2) is reviewable under post conviction procedures in which the reasons for the absence of protest or objection at trial may be established through a plenary hearing."

80 Md.App. at 441–42, 564 A.2d 105, quoting *Cherry,* 305 Md. at 640, 506 A.2d 228. We then held:

Notwithstanding the fact that counsel did not request an opportunity to make closing argument before the verdict was rendered and did not object to the premature verdict once it was rendered, it is patent that the appellant's conviction must be reversed.... Here, counsel began to make the argument. He did not complete it, however, because, as the record reflects, the court interrupted to render its verdict. It is of no consequence that no objection was lodged to the premature verdict. The record is sufficient to demonstrate the circumstances surrounding the premature verdict and those circumstances, in turn, demonstrate that appellant was denied the benefit of closing argument.

*Id.* (Footnote omitted).

In the case *sub judice,* almost identical facts are present. The reason for the court's action in cutting off the argument was that it had to be someplace else. That it thought it knew what appellant's argument would be is of no consequence, since what is paramount is the right of appellant's counsel to argue. Moreover, as noted earlier, the right to present argument exists notwithstanding how simple or straightforward the facts may appear to be to the trial court or other observer. Appellant was entitled to a full and complete opportunity to present, through counsel, argument on his suppression motion. Denial of that right was reversible error.[2]

---

2. We are not to be understood as prohibiting the court from limiting repetitive or irrelevant argument.

## SENTENCING

The following occurred at appellant's sentencing:

THE COURT: All right, Mr. Brown. You can stand back up, sir. Sentence of this Court that you be sentenced to the Department of Corrections for a period of 20 years. Going to give you credit for 220 what?

MR. NILAND: Two hundred twenty-four days, Your Honor.

THE COURT: Two hundred twenty-four days served. You have 30 days in which—when you are released, I am going to place you under the supervision of the Department of Parole and Probation for a period of five years. No, I can't do that.

MR. NILAND: You can't do that unless you suspend part of the sentence.

THE COURT: All right, fine, I am going to sentence you to 30 years, suspend all of that but 20.

MR. NILAND: I don't think you can do that now either, Your Honor.

THE COURT: He hasn't left.

MR. NILAND: Very well, Your Honor.

THE COURT: He is standing right in front of me. I want the record to show he's standing right in front of me.

MR. NILAND: I agree he is standing right in front of you, Your Honor.

THE COURT: Okay. I haven't completed my sentence yet. I found that while I was completing my sentence what I said was not what I intended so I intend now to say what I intended originally which is I sentence him to the Department of Corrections for a period of 30 years. I am going to suspend all of that but 20 years, and when he is released, I am going to place him under the supervision of the Department of Parole and Probation for a period of five years. I am going to give him credit for how many days, Mr. Niland?

MR. NILAND: Two hundred twenty-four, Your Honor.

**34**

THE COURT: Two hundred twenty-four days served.

█ Appellant contends that his sentence must be limited to a term of 20 years. This is so, he says, because once a court has pronounced a legal sentence, it may not then increase that sentence by either adding to its length or imposing a period of probation. He relies upon *State v. Sayre*, 314 Md. 559, 552 A.2d 553 (1989).

Unlike *Sayre*, in the case *sub judice*, the trial court had not terminated appellant's case and remanded him to custody, when it changed the sentence. Thus, when the defense notified the court of the defect in the sentence it intended to impose, the court had not then completed the sentencing.

In *Sayre*, the court was presented with the question, "when is a sentence deemed to be imposed for purposes of the rule's [3] prohibition against increase?" 314 Md. at 560, 552 A.2d 553. The question arose in the following context. The trial court sentenced Sayre to a term of imprisonment "to be served *concurrently* with any sentence that you are currently obligated to serve," (emphasis in original) *id.*, and ordered him remanded to custody. The judge intended, however, that the sentence be served consecutively. When he was made aware that he had imposed a concurrent sentence, the judge called Sayre back and "clarified" that the sentence would be served consecutively. 314 Md. at 561, 552 A.2d 553. Sayre, of course, contended on appeal that the "clarification" effected an illegal increase in sentence. The Court agreed.

> Explaining how it reached the result it did, the Court said:
> After careful weighing of the policy considerations implicated, we, too, are unwilling to allow a procedure that will permit an inquiry of the sentencing judge's subjective intent under circumstances like those here present. We hold that under Rule 4–345(b), once sentence has been imposed, there can be no inquiry into intention or inad-

---

3. Maryland Rule 4–345(b), pursuant to which a "court may modify or reduce or strike, but may not increase the length of, a sentence."

vertence. The sentence, for Rule 4–345(b) purposes, stands as pronounced. Like any bright line rule, this holding may produce occasional hardship for the State, but will avoid difficult questions of subjective intent and should encourage trial judges to use great care in pronouncing sentence—an obviously desirable practice.

\*   \*   \*   \*   \*   \*

It remains only to determine when a sentence has been imposed for purposes of Rule 4–345(b). The rule is silent in this respect, and there seems to be no relevant "legislative" history. We do not believe, however, that the answer turns on questions of when the defendant begins serving his or her sentence or when he or she leaves the custody of a court officer and enters the custody of the executive branch.

Ordinarily, sentencing may be considered as the last phase of a criminal trial. When sentence is pronounced or imposed, there is a final judgment for purposes of appeal. *See, e.g. Jones v. State,* 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984). The sentencing phase, for purposes of Rule 4–345(b), is at least at an end when the court indicates that the particular case before it is terminated, as by calling, or directing the clerk to call, the next case. Here, Judge Corderman, after imposing the concurrent sentence on Sayre, said

He is to be remanded to custody. Come, get him. Obviously, Sayre's case was over. There was nothing more to be done. The court was ready to proceed to the next case. We hold that under these circumstances sentence was imposed. (Footnote omitted)

314 Md. at 565–66, 552 A.2d 553.

Since appellant in the instant case had not been remanded to custody, and, indeed, was still before the court, the sentencing phase of the proceeding had not been terminated; consequently, the court was free to change the sentence, which included increasing it.

**36**

JUDGMENT REVERSED, CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR NEW TRIAL.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.