589 A.2d 969

**Derrick Quinton WHITE**

v.

**STATE of Maryland.**

**No. 9, Sept. Term, 1990.**

Court of Appeals of Maryland.

May 14, 1991.

Gary S. Offutt, and George E. Burns, Jr., Asst. Public Defenders (Alan H. Murrell, Public Defender, Baltimore), on brief, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore), on brief, for appellee.

Before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY, McAULIFFE, CHASANOW, CHARLES E. ORTH, Jr., retired, Specially Assigned, JJ.

McAULIFFE, Judge.

Derrick Quinton White murdered Victor Joseph Furst on 14 August 1981, during an attempt to rob Furst. In 1982, White was convicted of murder and related offenses by a jury in the Circuit Court for Baltimore County, and sentenced to death. This Court affirmed the conviction and sentence. *White v. State*, 300 Md. 719, 481 A.2d 201 (1984), *cert. denied*, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985). In 1986, White filed a petition for relief pursuant to the Uniform Post Conviction Procedure Act, Article 27, §§ 645A through 645J, Maryland Code (1957, 1987 Repl. Vol.). In 1988, the post conviction court denied relief that would affect the verdict of guilt, but directed that the sentence of death be vacated and the defendant be given a new sentencing proceeding.

White waived his right to a jury determination of sentence. The sentencing proceeding was held before Judge J.G. Turnbull, II, in January, 1990, and the defendant was again sentenced to death. In this appeal White raises several questions, the resolution of one of which will require that we again vacate the sentence and remand the case for a third sentencing proceeding.

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

*Facts*

We repeat the facts relating to the offense as originally set forth in *White v. State*, 300 Md. at 723–25, 481 A.2d 201:

"On August 14, 1981, White, then age 18, shot and killed Victor Joseph Furst (Furst), age 61, during an attempt to rob Furst of the moped he was riding. The State proved the following facts, in large part through White's accomplice, Gerard Eugene Anthony (Anthony) also age 18.

"White and Anthony each lived on the west side of Baltimore City. They had known one another for about two months prior to the murder. Neither was employed. They had discussed getting some money illegally. On the morning of August 14 Anthony took his father's loaded revolver from their home and met White nearby. Anthony put the gun in the glove compartment of the red 1981 Pontiac T1000 which White had been driving. With Anthony at the wheel of the car, they drove into western Baltimore County. White directed them to a tile store at Rolling Road and Route 40 West which they intended to rob. With White in possession of the gun, they entered the store; but it was too crowded and they left.

"Anthony resumed driving with White in the front passenger seat giving directions to another store in the vicinity to rob. On their way they drove by Furst, who was riding a new moped in the opposite direction. White told Anthony that it was a good model moped, that an old man was riding it and that they were going to get it. Anthony said they should forget about the moped and 'go to the money.' White persisted and said that the moped would fit in the back of the Pontiac. Anthony turned the car around. They pursued the man on the moped and caught up to him in the 7400 block of Dogwood Road.

"As Anthony drove abreast of Furst, White pointed the gun out of the window on the passenger side at Furst. About five seconds later White fired, as Furst was turning his head away from the gun. Anthony immediately accelerated leaving Furst and the moped lying alongside

the road. When Anthony asked 'what the hell did he do that for,' White said that '[Furst] looked like he wasn't going to stop.' Furst died of a single gunshot wound which entered his chest from left to right and pierced the aorta.

"Within one-half hour of the shooting the murderers were arrested nearby, in the Pontiac. Occupants of a car which had been proceeding toward the scene at the time of the crime described the red car and gave partial descriptions of its driver and passenger. At the time of arrest, the handgun, with one spent cartridge in the chamber and five live rounds in the cylinder, was recovered from the floor of the front passenger seat occupied by White."

Additional facts are included in our subsequent discussion of the defendant's contentions.

### Weighing of Aggravating and Mitigating Circumstances

■ Judge Turnbull found beyond a reasonable doubt that a single aggravating circumstance existed in this case —"[t]he defendant committed the murder while ... attempting to commit a robbery...." Art. 27, § 413(d)(10). He found the defendant had shown by a preponderance of the evidence the existence of at least one statutory mitigating circumstance [1]—the defendant had no prior record of a

---

1. It is not entirely clear whether the trial judge considered the "youthful age of the defendant at the time of the crime," Art. 27, § 413(g)(5), as a statutory mitigating factor. His entry on the sentencing determination form required by Maryland Rule 4–343(e) indicates that he did not. He stated as a part of his announced findings that "[t]he defendant was of youthful age at the time of this crime but certainly not youthful by way of experience." He did, however, clearly include the defendant's age as a relevant circumstance when discussing the balancing of aggravating and mitigating circumstances. As we previously pointed out in *White v. State,* 300 Md. 719, 738–39, 481 A.2d 201 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985), White's chronological age at the time of the murder did not mandate a finding that the statutory mitigating factor relating to age had been established. *See also Stebbing v. State,* 299 Md. 331, 473

criminal violation within the meaning of Art. 27, § 413(g)(1). Additionally, the trial judge specifically found as a non-statutory mitigating circumstance "the defendant's background," and considered as well "the defendant's age at the time of this crime, ... the fact that he can function in a structured setting, [and] the fact that he has psychological shortcomings." In his discussion of the weighing of aggravating and mitigating circumstances, Judge Turnbull said, "[t]his case has been extremely difficult for the court."

The defendant contends that from a reading of the transcript of the oral opinion and findings of the court that followed, during which the judge described the burden and standard he applied in reaching his decision, it is apparent that the judge misapplied the law, or, in the alternative, that the record does not permit this Court to find with any reasonable degree of confidence that the trial judge applied the law correctly. We reproduce the portion of the transcript of Judge Turnbull's findings, supplying emphasis to those statements which give rise to the defendant's concern:

"It's my duty to weigh those aggravating circumstances found unanimously by me to exist against the mitigating circumstances that I have found to exist. *I must determine that the State has proven by a preponderance of the evidence that the mitigating circumstances outweigh the aggravating circumstances.*

"There is no doubt whatsoever from the testimony that this defendant, Mr. White, grew up in a poor, unfortunate background and surrounding. He, obviously, was on his own at an early age and usually, if not always, with one or more of his peers when he began a life of violating the laws of this State and committing various crimes. He started as a juvenile with minor crimes that required that

A.2d 903, *cert. denied,* 469 U.S. 900, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984). Whether Judge Turnbull considered White's youthful chronological age as a statutory mitigating circumstance or as a non-statutory mitigating circumstance is unimportant. The weight to be given a mitigating circumstance is a matter for the trier of fact, and is not affected by whether it is a statutory or a non-statutory circumstance.

he be placed in various detention facilities and/or group homes and, thereafter, slowly worked his way up to more serious crimes, the last being as a juvenile the crime of burglary. It caused him to be waived into the adult court and resulted in his incarceration in the Department of Correction, subsequently to be sent to Hagerstown. Shortly after his release on parole, he committed this senseless homicide. From the testimony, I find that all of the experts agree that he either will present a future danger and/or will never be able to function outside of an extremely structured environment.

"The sentence in this case must by law be either life or death, as I have already ruled that life without parole is not an option that I can consider at this time. When I take into account the defendant's age at the time of this crime, his overall background and the fact that he can function in a structured setting, the fact that he has psychological shortcomings, I have some, perhaps a great deal of sympathy for the defendant. *The question then becomes one of whether the mitigating circumstances and factors outweigh the aggravating circumstances,* since I find he was the principal in the first degree to the murder. I cannot put aside or ignore, however, that a 61 year old man on a pleasant August day in 1981 was minding his own business, out for a short trip on his new moped to see a gentleman about purchasing some steamed crabs and was coldly, bloodily, without any provocation whatsoever on his part, killed. This was not a case of revenge or jealousy or bad blood between parties. The defendant and Victor Furst were complete strangers. One moment he is alive and well on Dogwood Road in Baltimore County and one moment later he was dead, the tragic victim of what could only be called a bungled robbery. *I cannot find that the aggravating circumstances have outweighed the mitigating circumstances.* I, therefore, determine that the judgment and sentence of this Court shall be death."

■ The law that the trial judge was required to apply is clear—the burden is on the State to prove by a preponderance of the evidence that the aggravating circumstances outweigh the mitigating circumstances in order to secure a verdict of death. *Collins v. State,* 318 Md. 269, 296, 568 A.2d 1, *cert. denied,* —— U.S. ——, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990); *Harris v. State,* 312 Md. 225, 256, 539 A.2d 637 (1988); *Scott v. State,* 310 Md. 277, 284, 529 A.2d 340, 343 (1987). Thus, if the aggravating circumstances do not outweigh the mitigating circumstances, or if the weight of the aggravating circumstances is equal to the weight of the mitigating circumstances, the sentence cannot be death.

■ In the course of his oral opinion, the trial judge referred on three occasions to the law governing his task as the sentencing authority. First, the judge said "I must determine that the State has proven by a preponderance of the evidence that the mitigating circumstances outweigh the aggravating circumstances." The correct test is whether the State has proven by a preponderance that the aggravating circumstances outweigh the mitigating circumstances. It is possible, of course, that the judge unwittingly transposed the words "mitigating" and "aggravating" when he spoke.[2] Transposing those words produces a correct statement of the law.

The second reference to the weighing process is either incomplete or similarly flawed. The judge said "[t]he question then becomes one of whether the mitigating circum-

---

2. The record offers some support for this possibility. At a pretrial hearing held 11 days earlier, Judge Turnbull correctly advised the defendant on two occasions that the trier of fact would have to find by a preponderance of the evidence that the aggravating circumstances outweighed the mitigating circumstances in order to return a verdict of death. Moreover, the prosecutor correctly stated the law during her summation. Additionally, Judge Turnbull checked the answer "yes" to the following statement in Section IV of the Findings and Sentencing Determination Form: "I find that the State has proved by A PREPONDERANCE OF THE EVIDENCE that the aggravating circumstance marked 'proven' in Section II outweighs the mitigating circumstances in Section III."

stances and factors outweigh the aggravating circumstances." Read literally and in the light of this Court's decisions, the statement does not address allocation of the burden of proof. The statement can be read to describe one possible result of the weighing process. *See Foster, Evans and Huffington v. State,* 305 Md. 306, 503 A.2d 1326 (1986); *Foster v. State,* 304 Md. 439, 476–80, 499 A.2d 1236 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). If, however, the court intended to include allocation between the parties of the burden of proof, then we face the same problem presented by the first statement. This may have been a simple misstatement, because transposing the two words corrects the statement. On the other hand, repetition of the error may be more indicative of misunderstanding than of an isolated misstatement.

The final reference is the most disturbing. The judge said "I cannot find that the aggravating circumstances have outweighed the mitigating circumstances." If that were literally true, the sentence would have to be life imprisonment, and that is obviously not what the judge intended. If the explanation is that the judge inadvertently transposed the words, as he may have done before, there is still a problem because his statement then indicates he applied the wrong test. If the court meant to say that it could not find that the mitigating circumstances outweighed the aggravating circumstances, the statement would still embrace a state of mind in which the factors were evenly balanced. As we have pointed out on numerous occasions, the defendant does not have any burden to show that mitigating circumstances outweigh aggravating circumstances—rather, the burden is on the State to show that the aggravating circumstances outweigh the mitigating circumstances. *Collins v. State,* 318 Md. at 296, 568 A.2d 1; *Harris v. State,* 312 Md. at 256, 539 A.2d 637; *Scott v. State,* 310 Md. at 284, 529 A.2d 340. Moreover, stripped of any consideration of which party has a burden, and viewed solely from the perspective of weighing the various circumstances which are before the trier of fact, the requirement remains that

the aggravating circumstances must outweigh the mitigating circumstances, and not vice versa.

We cannot affirm the sentence of death upon this record. Even if we assume a thrice repeated transposition of words, there remains the fact that the trial judge, in a close case described by him as "extremely difficult for the court," apparently utilized the wrong test in the final weighing process.[3] In *Maziarz v. State*, 302 Md. 1, 5–6, 485 A.2d 245 (1984), we vacated a sentence of death because the sentencing comments of the trial judge disclosed his belief that "unless the mitigating circumstances are overwhelming, the death penalty is mandated if any one of the aggravating circumstances is proven by the State." Although the trial judge in the case before us did not suggest he believed the mitigating circumstances need be overwhelming, his statement suggests he did believe the mitigating circumstances had to outweigh the aggravating circumstances to avoid a sentence of death, and that is plainly wrong.

## *Exclusion of Evidence*

 Because the questions are likely to recur at the next sentencing proceeding, we review three rulings of the trial

---

**3.** Two weeks after the sentencing, the trial judge filed a written statement in the case, indicating that it had been brought to his attention "that he might have inadvertently exchanged the words 'mitigating' and 'aggravating' during the course of his [oral] comments" and stating that "although on two occasions I stated that the 'mitigating factors did not outweigh the aggravating factors' I found as a fact that the *aggravating* factors outweighed the *mitigating* factors and the State of Maryland had accordingly met its burden of proof." Although a subsequent written opinion may sometimes be filed to supplement brief oral comments made from the bench, that was not the purpose of this statement. Here, the trial judge states, in referring to an earlier time, that in his mind he employed the correct test, even though he may have articulated an incorrect test. Assuming we could give some weight to a judge's statement with respect to a transposition of terms, or concerning an incorrect transcript, we cannot accept this type of after-the-fact statement of subjective decision-making in substitution for the statement actually made at the time of sentencing and correctly reported in the transcript. *See State v. Sayre*, 314 Md. 559, 565, 552 A.2d 553 (1989) (after-the-fact inquiry into the sentencing judge's subjective intent not ordinarily permitted).

judge excluding evidence offered by the defendant. First, the defendant protests that he was precluded from offering evidence to show the limited deterrent effect of the death penalty. White filed a pretrial motion asking that the court "permit the introduction of statistical evidence, research findings and expert testimony regarding the deterrent effect of capital punishment." Neither in the motion, nor in the brief pretrial argument offered in support of the motion, did the defendant proffer the content of the evidence he sought to introduce, or even suggest that the evidence would demonstrate the lack of efficacy of capital punishment as a general deterrent. The trial judge, questioning how such evidence could be relevant to the determination that must be made in a sentencing proceeding, provisionally denied the motion, but stated that "if per chance the defense produces a witness and intends to delve into this area, I will make a determination at that point." The defendant does not point to subsequent offer or proffer of evidence bearing on this issue.

The ruling of the trial judge was correct. The General Assembly has made the decision to permit capital punishment under certain circumstances. Assuming the existence of statistical evidence that capital punishment does not serve as a general deterrent, that evidence is best presented to the legislature. We have made it clear that the defendant must be permitted to introduce into evidence anything relating to the defendant or the crime which may cause the sentencing authority to believe that death may not be appropriate. *Doering v. State,* 313 Md. 384, 545 A.2d 1281 (1988); *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). The question of the general deterrence value of capital punishment does not deal with the defendant or the crime. There is, therefore, neither cause nor justification for introducing a battle of experts or statistics on this perplexing question before the trier of fact in a capital punishment sentencing proceeding.

Next, the defendant contends the trial judge erred in denying the defendant's motion that the trial judge include the sentence of life without parole as an available sentencing alternative. In support of his motion, the defendant filed a written waiver of any objection to the imposition of such a sentence, and testified that he knowingly waived "any *ex post facto* argument" concerning imposition of penalty. Judge Turnbull ruled that he had no authority to impose a sentence not permitted by law, and that the defendant could not confer that authority upon him by consent or waiver. He was correct. In *Collins v. State, supra,* 318 Md. at 298, 568 A.2d 1, we rejected a similar contention, declaring that "the life without parole sentencing option is only available for offenses occurring after the effective date of the [statute], July 1, 1987." Imposing the requested sentence in this case would be illegal, and the defendant cannot validate an illegal sentence or insulate it from appeal or collateral attack by consent or waiver. As an afterthought, the defendant now suggests the evidence of his willingness to accept an illegal sentence should have been admitted as a mitigating circumstance. He did not offer the evidence on that basis, and if he had, it would have been properly rejected. Evidence that the defendant claims a willingness to accept a sentence that the court has no authority to impose is simply not relevant.

The third category of evidence the defendant contends was improperly excluded is a compilation prepared by the Office of the Public Defender of all cases in this State in which notice of intention to seek the death penalty could have been filed by the State's Attorney. The compilation summarizes the facts of each case, reveals whether the death penalty was sought, and discloses the sentence actually imposed. The defendant offered this evidence in support of two arguments.

First, he argued that a proportionality review of these cases would compel the conclusion that the imposition of the death sentence in the instant case would be arbitrary,

cruel, and unusual punishment, and therefore the trial judge was obliged to strike the notice of intention to seek the death penalty on constitutional grounds. That argument has no merit. There is no federal constitutional requirement of proportionality review in death penalty cases. *Pulley v. Harris,* 465 U.S. 37, 50–51, 104 S.Ct. 871, 879–80, 79 L.Ed.2d 29 (1984); *Colvin v. State,* 299 Md. 88, 115, 472 A.2d 953, *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). Proportionality review in this State is mandated by statute. Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 414(e) & (f). That statute directs the review be conducted by this Court, not by the trial court.

As a second reason for offering the compilation of cases, the defendant contended that a comparison of his case with other first degree murder cases where the defendant was not sentenced to death would assist the trier of fact in determining the proper weight to be given the aggravating circumstance and might also serve as a separate mitigating circumstance. In effect, the defendant again seeks to compel a proportionality review by the sentencing authority. Although we have said that evidence proposed by a defendant to establish the existence of a mitigating circumstance "should be generously viewed by a trial judge," *Johnson v. State,* 303 Md. 487, 527, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986), we have also said that mitigating circumstances are "defendant specific" and "incident specific," and that ordinarily "[t]he findings regarding another person do not in any way tend to establish a material fact beneficial to an entirely different individual." *Id.* at 528–29, 495 A.2d 1. The trial judge did not err in refusing to admit the proffered evidence.

SENTENCE OF DEATH VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW SENTENCING PROCEEDING; COSTS TO BE PAID BY BALTIMORE COUNTY.