779 A.2d 1031 (2001)
140 Md. App. 48
Darrin Bernard RIDGEWAY
v.
STATE of Maryland.
No. 761, Sept. Term, 2000.
Court of Special Appeals of Maryland.
September 4, 2001.
*1034 John L. Kopolow, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief) Baltimore, for appellant.
Shannon E. Avery, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Marna McLendon, State's Attorney for Howard County, Ellicott City, on the brief) for appellee.
Submitted before SALMON, KRAUSER, WILLIAM W. WENNER, (Retired, specially assigned) JJ.
*1033 KRAUSER, Judge.
Early one morning, three shotgun blasts ripped through a trailer home, wounding two sleeping adults and terrifying three children. Appellant, Darrin Bernard Ridgeway, was accused of firing those shots. He was subsequently charged with, among other things, five counts of first degree assault. Following a jury trial in the Circuit Court for Howard County, appellant was convicted of two counts of first degree assault, three counts of reckless endangerment, and one count of malicious destruction of property.
Although appellant was convicted of only two of the five assault charges, he was mistakenly sentenced by the trial court to a term of ten years' imprisonment on four of the five assault counts and a term of five years' imprisonment on the fifth assault count. He received no sentence, however, for any of his three convictions for reckless endangerment; apparently, the trial court erroneously assumed that they merged into the three counts of assault for which he was sentenced but not convicted. Because the court ordered that the sentences on all five counts of first degree assault were to run consecutively, appellant received a total sentence of forty-five years' imprisonment. His sentence for malicious destruction of property was suspended.
When the sentencing error was discovered a few hours after sentencing, the case was recalled, and the trial court, in the presence of appellant and his attorney, vacated appellant's sentences on three of the five counts of first degree assault and sentenced appellant to a term of five years' imprisonment for each of his three reckless endangerment convictions. As before, the trial court ordered that all sentences were to run consecutively. Appellant's total sentence was thus reduced to thirty years' imprisonment, fifteen years less than his initial sentence.
On appeal, appellant presents two questions, which we have rephrased to more accurately reflect the two issues before us:
I. Did the trial court err in recalling appellant's case several hours after sentencing had ended and imposing a sentence for each of his reckless endangerment convictions?
I. Did the trial court err in allowing a prosecution witness to testify that appellant had told him that, hours before the trailer shooting, he had fired his shotgun through the door of an apartment, where he believed his assailants were staying?
Finding that the trial court did not err in belatedly sentencing appellant for his three reckless endangerment convictions or in admitting evidence of the earlier apartment shooting by appellant, we shall affirm the judgments of the trial court.

BACKGROUND
On July 22, 1998, at 4 a.m., appellant fired a twelve-gauge shotgun three times into a trailer home, wounding two of the trailer's five occupants, Morgan Kinney *1035 and Beth Ann Hanning, as they lay asleep in the master bedroom. Kinney received multiple wounds to his legs, and Hanning received a single leg wound. The three other occupants of the trailer home were Kinney's eleven-year-old daughter, Erica, and her two friends, ten-year-old Danielle Tyler-Thornberg and eleven-year-old Erica Tyler-Thornberg. Fortunately, they were not physically harmed by the shotgun blasts because they were in a bedroom at the other end of the trailer home. When the shooting was over, all three were found huddled in one of the trailer's closets.
The shooting was the result of events that were set in motion three weeks earlier when appellant was allegedly kidnapped by three men who believed that he had stolen $7000 worth of cocaine from them. According to the statement appellant gave Officer Susan Ensko of the Howard County Police Department, the three men took him at gun point to an apartment, where they tied him up and threatened to put him in a car and set it ablaze. Appellant believed that the men were drug dealers and that a man named "Morgan," presumably the Morgan Kinney of this case, had lent his car to them and allowed two of the three men to use his trailer for drug dealing.
Appellant subsequently purchased a twelve-gauge shotgun and told two friends of his, Mark Bell and Cathy Sowers, that he was going to kill the men who had kidnapped and threatened him. On the morning of July 22, 1998, he went to an apartment, which he believed the three men used, and fired a shotgun through the front door. He then went to Kinney's trailer, stood at one end of it, and fired three times directly into the trailer.
Later, appellant met with his two friends, Bell and Sowers, and told them about both shootings.

DISCUSSION

I
Appellant contends that the trial judge, by imposing sentences for his reckless endangerment convictions after failing to do so at the initial sentencing, violated the prohibition in Maryland Rule 4-345(b) against increasing the sentence of a defendant after he or she has been sentenced and left the courtroom. That rule provides:
The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding (emphasis added).
The circumstances of appellant's initial and subsequent sentencing were as follows. On April 20, 2000, the trial court held a sentencing hearing. After hearing from both sides, the trial court stated:
Well, this was a particularly appalling, disgusting, repugnant and repulsive crime, because it involved at least four total strangers and four totally innocent persons. I mean, to lurk around in the middle of the night and pump shotgun shots into a trailer without knowing who's in there, without caring who is in there, is awfully low. And it is correct that Mr. Ridgeway has a significant prior record. And according to the psychological *1036 evaluation, Patuxent has a feeble, although publicly recognized, purpose and that is rehabilitation. And of course that has a fault major premise (sic). The premise is that there's something to salvage. And in Mr. Ridgeway's case, that's not correct.
The court then imposed sentence as follows:
All right, sentence is as follows: As to count one, Mr. KinneyI'm satisfied that Mr. Kinney was in the drug business. He associated with drug people and, uh, that's how Mr. Ridgeway knew him and knew about this trailer. But even Mr. Kinney, even Mr. Kinney is entitled to be protected from being shot down in the middle of the night. So as to count one, the sentence is five years in the Department of Correction. Now we get to all the innocent people. Count five, as to Beth Ann Hanning, the sentence is ten years, that sentence to run consecutive to the count one. As to nine, as to count nine, that's as to little Erica Kirkbirde, the sentence is ten years in the Department of Correction, that sentence to run consecutive to count five. Sentence is as to count thirteen, count thirteen is little Erica Tyler-Thornburg, the sentence is ten years to run consecutively to the sentence imposed in count nine. As to count seventeen, that's little Erica Tyler-Thornburgor Danielle Tyler-Thornburg, I'm sorry, the sentence is ten years in the Department of Correction, that sentence to run consecutive to the sentence imposed in count thirteen. And as to count twenty-two, the malicious destruction of property, the Court will suspend the imposition of sentence generally. The Court regards the other counts as to second degree and reckless endangerment as merged. Total of forty-five years to be served in the Department of Correction.
Unfortunately for the court, appellant had not been convicted of three of the counts of first degree assault for which it had sentenced him, and therefore, the three reckless endangerment counts, for which he had been convicted, could not have merged, as it directed, with those three counts. Consequently, appellant received three illegal sentences on three of the five assault counts and no sentence at all on the three reckless endangerment counts of which he was convicted.
A little more than an hour later, the court, in its words, "was notified of the error by the Clerk's Office, who [sic] was preparing the commitment papers." Approximately three hours after the initial sentencing, the case was recalled. With appellant and his counsel present, the court informed both sides of the error. Invoking Rule 4-345(a), the court declared the appellant's sentence illegal and vacated three of the five assault sentences. It then, over defense counsel's objection, imposed consecutive terms of five years' imprisonment for each of appellant's three reckless endangerment convictions. The court explained its reasoning as follows:
Well, for the record, the Court is mindful and has read and re-read and re-read the rule. It is 4-345. And has read and re-read State versus Sayre, S-A-Y-R-E, 314 Maryland 559[, 552 A.2d 553]. And I think this matter is distinguishable. We're not talking about subjective intent and all sorts of other things. And we're not talking about increasing the sentence. The question is that the Court clearly indicated that it was imposing a separate sentence for the offenses committed against each of these people. And in that regard, that was the intention of the sentence that was imposed this morning. Now obviously with respect to the three young people, the children sleeping in the trailer, Erica Kirkbirde, Erica Tyler-Thornburg and *1037 Danielle Tyler-Thornburg, the only offenses for which Mr. Ridgeway was convicted were counts twelve as to Erica Kirkbirde, count sixteen as to Erica Tyler-Thornburg, and count twenty as to Danielle Tyler-Thornburg. And each of those counts charged the defendant with reckless endangerment and that's what he was convicted of. So in correcting the sentence, this Court does hereby strike the sentences imposed earlier this morning with respect to count nine, count thirteen, and count seventeen.
Appellant contends that the trial court, by belatedly sentencing him for the three reckless endangerment convictions, in effect, increased the sentence for each of those convictions from zero to five years' imprisonment. Appellant further contends that by "increasing" those sentences after he had been sentenced and left the courtroom, the trial court violated Rule 4-345(b), which prohibits a court from "increas[ing] a sentence after sentence has been imposed," unless it is to "correct an evident mistake in the announcement of a sentence" and "the correction is made on the record before the defendant leaves the courtroom following the sentencing procedure."
In support of that contention, appellant cites two case: State v. Sayre, 314 Md. 559, 552 A.2d 553 (1989), which predates the 1992 changes to Rule 4-345(b), and Mendes v. State, 102 Md.App. 246, 649 A.2d 40 (1994), which post-dates those changes. In Sayre, while sentencing the defendant for assaulting a prison guard, the trial court inadvertently stated that the defendant was to serve his five-year sentence "concurrently" with, rather than "consecutively" to, any sentences he was then serving. Within moments of having imposed sentence, the trial court was informed by the prosecutor that it had imposed a concurrent and not a consecutive sentence. To correct that mistake, the trial court ordered that the defendant be brought back to the courtroom. When the defendant and his counsel arrived, the judge ordered that the defendant's sentence be modified so that it would now run "consecutively" to any terms he was then serving. The court explained that it had "meant to say consecutively" when it first imposed sentence. Id. at 561, 552 A.2d 553.
The Court of Appeals was not sympathetic. It first noted that "when a sentence is changed from concurrent to consecutive, it is increased in length." Id. at 562, 552 A.2d 553. It further observed that "to permit correction of a slip of the tongue is not necessarily undesirable," but "to allow a judge who has intentionally made a sentencing decision to change his mind in a manner adverse to the defendant... carries with it too many possibilities of vindictiveness" because "it is not always easy to distinguish between an inadvertent slip of the tongue and a true change of mind." Id. at 563-64, 552 A.2d 553. The Court stated that it was "unwilling to allow a procedure that will permit an inquiry of the sentencing judge's subjective intent under circumstances like those here present." Id. at 565, 552 A.2d 553. The Court therefore held "that under Rule 4-345(b), once sentence has been imposed, there can be no inquiry into intention or inadvertence." Id. Later, Rule 4-345(b) was amended to allow a court to correct a sentencing error, provided that it rectified that error on the record before the defendant left the courtroom, thus creating a limited opportunity to correct a sentencing mistake.
A few years later, this Court stated: "Under Sayre and under the amended rule, the Court has allowed a limited opportunity to correct an evident mispronouncement; it has, for that purpose alone, extended the duration of the `imposition' *1038 for a brief period beyond the conclusion of the immediate pronouncement until the defendant has left the courtroom." Mendes, 102 Md.App. at 256, 649 A.2d 40. Neither Sayre, its progeny, nor Rule 4-345(b), however, are applicable to the case sub judice. A review of the trial judge's actions in this case does not require, as in Sayre, an inquiry into his subjective intent. Moreover, appellant's sentences were not increased by the trial court, as Sayre's was, which would have brought this matter within the purview of Rule 4-345(b).
Indeed, there is no need to probe the thought processes of the trial judge to determine the court's motive for recalling this case. The record itself is clear: the trial judge erred in sentencing appellant for crimes he did not commit (or at least was acquitted of) while, at the same time, failing to sentence him for crimes he did commit. Moreover, his intention to impose a sentence in connection with each of the three children who had been endangered by the shotgun blasts is unambiguously set forth in the sentencing transcript. After separately naming each child and identifying the assault count associated with that child, the court imposed a separate sentence. In imposing sentence, the trial judge made it plain that appellant's conduct amounted to a criminal act against each of the three children, and he intended to impose a separate and consecutive sentence with respect to each child.
Moreover, the instant case does not involve, as in Sayre, the increase of a sentence after sentencing has concluded. In fact, at the time of the second sentencing, no sentence had yet been imposed for the three reckless endangerment convictions in question. Appellant of course claims otherwise. He contends that the initial failure of the court to sentence appellant for the reckless endangerment convictions was tantamount to the imposition of a sentence of "zero" years for each conviction and that the later imposition of five-year sentences for each conviction increased the sentences for those convictions from zero to five years, in violation of Rule 4-345(b).
We disagree. The trial judge's failure to sentence appellant did not amount to a sentence of zero years. A sentence is defined as a "fine, probation, or incarceration imposed to punish, rehabilitate, or deter a convicted criminal defendant." Epps v. Levine, 457 F.Supp. 561, 566 (D.Md.1978). See also Resper v. State, 354 Md. 611, 620, 732 A.2d 863 (1999) (adopting the BLACK'S LAW DICTIONARY (6th ed.1990) definition of the term "sentence" as "the judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution, imposing the punishment to be inflicted, usually in the form of a fine, incarceration, or probation"). As the inadvertent failure to impose sentence here had no penal, deterrent, or rehabilitative purpose, appellant's attempt to characterize that failure as a sentence of "zero years" is without merit.
We do note, however, one instance in which a failure to sentence on certain counts has been deemed by the Court of Appeals to be "tantamount to a suspension of sentence on those counts." See Fabian v. State, 235 Md. 306, 313, 201 A.2d 511 (1964). In Fabian, the defendant was convicted on three counts of an indictment that arose from a warehouse break-in. He was sentenced on only one of those counts. With little discussion, the Court stated that, for appeal purposes, it would treat the failure to impose a sentence on the two open convictions as a suspended sentence to permit the defendant to appeal those convictions. The Court's explanation for its decision did not exceed the boundaries of the following paragraph:
Thus, the failure to sentence under the second and fourth counts was tantamount *1039 to a suspension of sentence on those counts, and in such a case, the appellant had the right to appeal from the convictions under counts two and four, as well as from the conviction and sentence under count six.
Id. at 313, 201 A.2d 511.
Thirty years later, this Court declined to reach the same conclusion in a case in which the trial court had intentionally deferred sentencing on one count. See Mendes, 102 Md.App. 246, 649 A.2d 40 (1994). In declining to deem a deferred sentence a suspended one, we drew the following distinction between Fabian and the case before us: "Here, of course, [unlike in Fabian ] there is no basis for an inference that the court ever intended to suspend sentence on Count III." Id. at 248, n. 4, 649 A.2d 40.
As in Mendes, there is no indication in the case sub judice that the trial court "ever intended to suspend sentence" on the reckless endangerment convictions. Nor does appellant contend otherwise. In fact, for reasons that have already been discussed at length, the record clearly and unambiguously indicates that the trial court's failure to sentence on those counts was due solely to error.
Fabian is also distinguishable from the instant case on another, though no less compelling, ground. At issue in Fabian was the vindication of a procedural right: the right to appeal from a sentenceless conviction. No matter which way the Fabian court ruled, it would not have resulted in either the guilty escaping punishment or the innocent incurring it. In the instant case, however, the issue before us is whether a defendant, lawfully convicted, should escape punishment for offenses he committed simply because of a courtroom sentencing error that was corrected within hours of its commission. To permit him to do so serves neither the interests of justice nor any discernible public policy. Indeed, if anything, it would be an unfortunate step in the direction of making a procrustean attachment to procedure more important than the justice that procedure is intended to secure.
Finally, to extend Fabian's holding that a court's intentional failure to sentence may be tantamount to the imposition of a suspended sentence to instances where a court has unintentionally failed to sentence would undermine the principle that "an appealable final judgment does not come with conviction alone, but requires the imposition of a sentence for that conviction." 5 WAYNE R. LAFAVE ET. AL., CRIMINAL PROCEDURE § 27.2(b) at 867 (2d ed.1999). See also Buckner v. State, 11 Md.App. 55, 60, 272 A.2d 828 (1971) (holding that defendant's estate could not appeal where defendant died before sentence was imposed); Sands v. State, 9 Md.App. 71, 75, 262 A.2d 583 (1970)(stating that no appeal lies from a conviction where inadvertently no sentence was imposed).
We now turn to the question of whether the trial court violated the Fifth Amendment prohibition against double jeopardy when it recalled appellant's case and sentenced him a second time, albeit on different counts. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Applicable to the states through the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), it prohibits "multiple punishments for the same offense." Jones v. State, 357 Md. 141, 156, 742 A.2d 493 (1999) (citing Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969))).
*1040 Jeopardy does not attach to a second sentencing proceeding unless a sentence has been imposed at the first proceeding. State v. Jones, 340 Md. 235, 242, 666 A.2d 128 (1995). Because we previously determined that appellant had not received any sentence for his three convictions of reckless endangerment, jeopardy did not attach as to those convictions until he was sentenced for them at the second proceeding. In other words, "[u]ntil a convicted prisoner receives a sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption, and that he is therefore not put in jeopardy a second time when he receives his first valid sentence." King v. United States, 98 F.2d 291, 295 (D.C.Cir. 1938). Because appellant did not receive a sentence, let alone a sentence "which can withstand attack," for any of his three reckless endangerment convictions at his initial sentencing hearing, the sentences he subsequently received at the second sentencing hearing did not place him in jeopardy a second time.
Moreover, the Supreme Court has cautioned against permitting those convicted of a crime from using the Double Jeopardy Clause to avoid sentencing or, in other words, turning sentencing into "a game in which a wrong move by the judge means immunity for the prisoner." Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In Bozza, the issue before the Court was whether the "fact that the petitioner has been twice before the judge for sentencing and in a federal place of detention during the fivehour interim" constituted double jeopardy. Id. at 166, 67 S.Ct. 645. Holding that it did not, the Supreme Court reaffirmed its rejection of the "`doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing sentence.'" Id. at 166, 67 S.Ct. 645 (quoting In re Bonner, 151 U.S. 242, 260, 14 S.Ct. 323, 38 L.Ed. 149 (1894).) We agree.
The United States Court of Appeals for the District of Columbia Circuit has expressed similar concerns. In Rowley v. Welch, 114 F.2d 499, 503 (D.C.Cir.1940), it stated:
So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable. The sounder view would be that the lapse would vitiate the sentence, with the consequence that it would be void and no bar to a later and deliberate pronouncement of judgment.
In sum, appellant was convicted by a jury of three violent crimes that endangered three children; neither Rule 4-345(b) nor the Double Jeopardy Clause will shield him from his lawful condign sentence.

II
Appellant contends that the trial judge erred in admitting the testimony of Mark Bell that appellant had told Bell, after the shootings, that before firing his shotgun into the trailer, he had first gone to an apartment where he believed his kidnappers were staying, and fired his shotgun at the door of that apartment.
Initially, we note that in light of appellant's failure to object to Cathy Sowers' testimony connecting him with the apartment *1041 shooting, this issue is not properly before us. On direct examination, Sowers testified as follows.
He told me that, that he went to an apartment building and he thought where the drug dealers that were after him were at, were hanging at. And he shot the door. With his gun. And picked up the shells and left there and went to a trailer park where, uh, they hang out there, too. At this trailer. Where the guys rent out or whatever. Rent out the cars and stuff. To sell drugs. And shot at the trailer and a car.
A challenge to the trial court's decision to admit testimony is not preserved unless an objection is made each time that a question eliciting that testimony is posed. In other words, "when an appellant makes a timely objection, but fails to object at subsequent points in the proceedings, an objection is deemed waived." Snyder v. State, 104 Md.App. 533, 557, 657 A.2d 342 (1995). See also Brown v. State, 90 Md.App. 220, 224-26, 600 A.2d 1126 (1992); Clark v. State, 97 Md.App. 381, 395, 629 A.2d 1322 (1993). Although appellant objected to Bell's testimony regarding the apartment shooting, he did not object to Sowers' testimony about the same shooting. Thus, appellant sustained no prejudice from Bell's testimony and failed to preserve that issue for our review.
Furthermore, Bell's testimony regarding the apartment shooting was admissible. It was not prohibited by Maryland Rule 5-404(b), as "other crimes" evidence; nor did the trial court err, as appellant contends, in failing to first conduct the proper balancing test before admitting that evidence.
Maryland Rule 5-404(b) provides that: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.
In other words, "[e]vidence of prior criminal acts may not be introduced to prove guilt of the offense for which the defendant is on trial." Terry v. State, 332 Md. 329, 334, 631 A.2d 424 (1993). As the Court of Appeals explained in Terry, such "evidence is excluded because it may tend to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant." Id. But such evidence is admissible, the Court stressed, if it has "special relevance," that is, "if it is substantially relevant to a contested issue in the case, and is not offered merely to prove criminal character." Id.
In determining whether evidence of a prior bad act is admissible as "specially relevant," the trial court must engage in a three-step analysis: it must determine first, whether the evidence falls within one of the exceptions of Rule 5-404(b); second, whether the accused's involvement in those acts is established by clear and convincing evidence; and, third, whether the probative value of the evidence outweighs any undue prejudice likely to result from its admission. Wynn v. State, 351 Md. 307, 317, 718 A.2d 588 (1998) (citing State v. Faulkner, 314 Md. 630, 634-35, 552 A.2d 896 (1989)).
At trial, evidence was presented that appellant fired a shotgun into the trailer home he believed was used by three men, whom he claimed, had kidnapped and threatened him. When the defense crossexamined Officer Susan Ensko as to whether the police had ever investigated the kidnapping, she responded that they had and explained that, during that investigation, she learned that there had also been a shooting at an apartment where the *1042 kidnapping had allegedly occurred. Defense counsel permitted her to so testify without objection or interruption. On redirect, the prosecutor asked the officer when that shooting had occurred. She responded that it had occurred on July 22, the same day as the trailer shooting. The defense did not object to that question or otherwise seek a ruling from the court on this line of questioning.
When Bell was subsequently called to testify, he stated that appellant had told him that "he first went to an apartment, fired through the door. Then he went to a trailer and fired into the trailer." When asked why appellant had done that, Bell replied that appellant believed that the "people that tied him up" were either at the apartment or at the trailer.
Appellant does not contest that the evidence in question satisfied the first and second steps of the three step analysis. The two shootings, in satisfaction of the first step, clearly fell within the "common plan" or "motive" exceptions to Rule 5-404(b). They were both acts committed pursuant to his plan to retaliate against his alleged kidnappers. Nor does appellant dispute that, in satisfaction of the second step, there was clear and convincing evidence that appellant had committed the apartment shooting. The testimony of Bell and Ensko provided ample evidence of that fact. It is only as to the third step the weighing of probative value against prejudicial effectthat appellant claims judicial error. He argues that the prejudicial effect of such evidence was not considered by the court before admitting Bell's testimony. Given the similarity and temporal proximity of the crimes, he maintains that the prejudice engendered by the introduction of Bell's testimony was substantial; prejudice which, according to appellant, was unnecessary given the substantial evidence that appellant had committed the trailer shooting.
At the outset, we note that Bell's testimony was not introduced to prove appellant's violent or criminal nature. Indeed, the State never argued or even suggested, either expressly or impliedly, that the earlier shooting was evidence of appellant's violent character and therefore evidence that he committed the trailer shooting.
Moreover, that evidence was plainly admissible as it tended to show a common scheme or plan as well as motive. Indeed, the facts of this case are similar in all significant aspects to an earlier decision of ours in Epps v. State, 52 Md.App. 308, 450 A.2d 913 (1982). In that case, the defendant was charged with, among other things, murder and arson. Rebuffed in his efforts to reunite with his former girlfriend, the defendant set fire to her home and five weeks later, set fire to her aunt's home where she was staying. The fires resulted in the tragic deaths of three people.
Before trial, the court denied the defendant's motion to sever the cases. Following his conviction for first degree murder, this Court was asked to review that ruling on appeal. We subsequently held that the trial court had not abused its discretion in denying the defendant's severance motion as the evidence of one offense was admissible to establish the defendant's "motive and common scheme." We reasoned that "[b]ecause the evidence of both offenses demonstrate[d] a plan on the part of [the defendant] to get back at [his former girlfriend] after the break-up of their relationship, both offenses [met] the test of mutual admissibility." Id. at 319, 450 A.2d 913. Having found in Epps that a defendant's acts of vengeance, five weeks apart, were "mutually admissible" to show common plan and motive, we are constrained to reach the same result as to two acts of vengeance occurring only hours apart.
*1043 Appellant, relying upon State v. Faulkner, 314 Md. 630, 552 A.2d 896 (1989), also challenges the court's failure to expressly conduct a balancing test to evaluate the admissibility of the other crimes evidence. It is of no consequence, however, that the trial court did not articulate its reasoning on the record. In weighing the probative value of other crimes evidence against the prejudicial effects of such evidence, a trial court is not required to spell out in words every thought and step of logic in weighing its considerations. Streater v. State, 352 Md. 800, 821, 724 A.2d 111 (1999). We presume that trial judges know and properly apply the law. Davis v. State, 344 Md. 331, 339, 686 A.2d 1083 (1996). We therefore find that the trial court did not err in admitting the testimony in question.
JUDGMENTS AFFIRMED.
COSTS TO BE PAID BY APPELLANT.